Good morning, and may it please the Court. My name is Mikayla Posner of Weinberg, Roger & Rosenfeld. On behalf of Appellant Jessica Gonzalez, I would like to reserve five minutes for rebuttal. In light of the robust conversation and discussion that the panel just had regarding the previous case and the scope of the EEOC's authority with respect to the waiver of state law claims, I don't want to repeat everything that the CRD said, but I do want to make clear that I'm standing here today for two reasons. First, to ask this Court for guidance on the question that was before the District Court below us regarding how to apply the text of the statute regarding the statutory right of intervention, and to provide clarification as to who is a, quote, person aggrieved within the meaning of Title VII when, in the unique circumstances such as the case today, where the EEOC commences litigation not from a charge that an individual employee filed, but rather from a commissioner's charge, because individual employees filed anonymous reports and were too afraid to come forward and put their name to a charge. The second reason is to make clear that we are not asking that the entire apple cart be overturned. We are not seeking to unravel the consent decree as a whole. Rather, as in the District Court and here in the appellate briefing, Ms. Gonzalez has concerns about very specific provisions of the consent decree, and so all we are asking is for a remand to the District Court to address those specific provisions. Is Ms. Gonzalez a claimant that's filed a claim? She did not file a claim with the EEOC after the consent decree was approved because she did not want to impair her state law rights in order to be covered by the pending CRD litigation. However, we maintain that her claim is within the scope of the, the broad scope of the claims that is contained within the consent decree that was presented to the District Court for approval. And how is she harmed personally? She suffered, so the consent decree covers sexual harassment, pregnancy discrimination, and related retaliation. Ms. Gonzalez falls under the related retaliation portion because she engaged in protected opposition conduct to a hostile work environment that included being on the basis of sex, and she suffered retaliation, ultimately resulting in her constructive discharge in December of 2021 because she engaged in legally protected conduct. How does the order of the District Court harm Ms. Gonzalez? It harms the ability of the CRD class to recover the full benefits that it could recover under state law, since there's no cap on damages under state law, because the individuals who participated in the consent decree are now ineligible to recover. Rather, the group that, as counsel for the EEOC and Activision explained to the court, the approximately 123 that could be covered by the CRD litigation. So because Ms. Gonzalez is a member of the CRD class, the class recovery is affected. She is therefore affected by the consent decree as well. Counsel, for me, the elephant in the room is the timing of all of this. And she seems very, very, very late in this process. So do you want to address that? Yes, Your Honor. So as I was just explaining in my answer to Judge Vitaleano's question, Ms. Gonzalez suffered the adverse consequence, was, quote, aggrieved in around December of 2021. She could not have intervened before being a person aggrieved, because at that point she lacks the statutory right to intervene. I would like to point out that at the stage of the proceedings in which Ms. Gonzalez intervened, there were pending objections by the CRD, then DFEH, that were before the court at that precise time. So the court was already evaluating the proposed amended consent decree, since it was an amended consent decree at that time, and was evaluating the contents of that decree and the appropriateness of that decree. And Ms. Gonzalez provided her concerns the day after the CRD did. It just seems to me, under your theory of harm, which is that to the extent anybody settled in the federal action, your client as a member of the state class was going to be harmed. You knew that long before the, or your client knew that, right? That that type of harm was going to be experienced long before the consent decree was approved? Well, permit me to clarify my answer, please, Your Honor. What is the harm? That is the harm she is currently experiencing that permits her to retain standing to be before you today. At the time she moved to intervene, she was a person aggrieved who sought to participate in the consent decree process. Because both her federal and state rights were violated, she wanted to pursue remedies for both of those violations. I understand that. So what we're trying to get at, and I think now there's probably all three of us, but certainly two of us are trying to get at, is why was she timely? Well, she was timely because, one, she had to wait until she was aggrieved within the meaning of the statute. Which would have been December of 2021. Yes. Which is when the EEOC was denied intervention. Yes. The CRD, the first time, was denied intervention. Yes. Right. Why didn't she just, why didn't she seek to intervene then? Well, because, Your Honor, we, because she first brought objections before the court. She just wanted to get her concerns before the court at any means possible. The objections were stricken from the docket because of Ms. Gonzalez's non-party status. At that point, it was clear that intervention was the only means by which she could present her claims to the court. Give me the time. When did she file the objections? Let me check the docket. Is your argument, while you're checking there, is your argument that she was on notice then when her objections were denied or, you said, stricken from the record?  Yes, it is, Your Honor. Okay. So I'd like to know when she filed her objections and when her objections were stricken. Yes. I am looking for that answer for you right now, Your Honor. The objection was filed, well, let's see, it was stricken on February 10th of 2022. Okay. And what day did she file her, what day did she file her? I believe it was the same day. Petition for intervention. Oh, the petition for intervention was on March 4th of 2022, so less than a month later. So back to the first reason why we're here today, to request this court's guidance. There's no published appellate decision providing clarification on what is the meaning of, quote, person aggrieved in the context of EEOC litigation commenced from a commissioner's charge. The relevant language appears in 42 U.S.C. section 2000 E-5 F1, which provides that, quote, the person or persons aggrieved shall have the right to intervene in a civil action brought by the commission or the attorney general in a case involving a government, governmental agency, or political subdivision. This subsection applies to all charges that are filed with the commission. Subsection 2000 E-5 B clarifies what is a, quote, charge filed with the commission, which defines it as a charge filed by or on behalf of a person claiming to be aggrieved or by a member of the commission, which alleges that an employer has engaged in an unlawful employment practice. Excuse me. So whenever the language of subsection F1 references a, quote, charge, it is referring back to the definition that exists in subsection B, which very clearly includes a commissioner's charge. The type of charge will clarify who is aggrieved for the purposes of intervention. When a person files a charge alleging that they themselves have been the victim of an unlawful practice, a discriminatory practice covered by Title VII or any other statute that the EEOC enforces, very clearly that person is a person aggrieved who would have the statutory right to intervene. Similarly, that person would also receive notification from the EEOC when the EEOC declines to initiate litigation based on the charge that was filed. Subsection F1 makes clear that when the EEOC declines to initiate litigation that is commenced from a commissioner's charge, the EEOC is obligated to notify those individuals whom, quote, the commissioner's charge alleges was aggrieved by the unlawful employment practice, referring to the class that is covered by the commissioner's charge. Which did not include your client. It did. Your client had already decided she wasn't going to participate. I thought I was going to just participate in the state action. Correct, because of the contents of the consent decree. But the commissioner's charge, Your Honor, is worded. Your client didn't make that decision until she saw the content of the consent decree? Yes, Your Honor. The commissioner's charge, the CRD, not the CRD, excuse me, the complaint filed by the EEOC and the consent decree all have very broad language identifying the scope of the decree and the scope of the charge and the scope of the complaint. If you look on ER 6 on lines, it appears to be 14 through 17 of the consent decree. It broadly describes the actions, the actions scope, and alleging that defendants engaged in unlawful employment practices by subjecting individuals or employees, individuals, or a group of individuals to sexual harassment, pregnancy discrimination, and or related retaliation in violation of Section 703A and 704A of Title VII. So because of the broad scope that is provided for in the complaint and the consent decree, it is our position that Ms. Gonzalez suffered related retaliation and therefore was within the class that the commissioner's charge alleges was harmed by the Activision entity's unlawful conduct. Because she met that definition and because of the language of the text, we maintain that Ms. Gonzalez had a statutory right to intervene in the incident action. I would like to reserve the remainder of my time for rebuttal. Sure. That's fine. Thank you. We'll hear from opposing counsel. Are we going to be hearing from both of you? So we'll split just in case you watch that. I think we have the clock running two times, right, so they can watch their clock. Great. Perfect. Good morning, Your Honors. Chelsea Sharon again from the EEOC. Thank you for your time. I'd like to begin with the question, again, here of effective relief. And I haven't understood, perhaps I didn't hear Ms. Gonzalez when she said that she sought to take issue with specific provisions of the decree but not to unravel the decree as a whole. I didn't hear her articulate what those specific provisions were and, frankly, I'm at a loss as to what could be achieved at this late stage of implementation of the decree. I took her to be making two points in her briefing. One was that she wanted the releases to be invalidated. It does not seem, and she can correct me if I'm wrong, that she's pursuing that relief at this late stage. The other is that, as with CRD, she believes that the decree sanctions or even mandates the destruction of evidence for the reasons we explained that the consent decree has very specific record-keeping requirements. It's highly speculative that there would be any failure to retain records under the express requirements of the decree. So I'm assuming that she's challenging that latter issue about wanting specific safeguards in place for retention of evidence. Respectfully, we believe those already are within the scope of the decree and that any sort of redundant duplicative provisions would not be effective relief at this stage. With respect to—I'm sorry, did you have a question? No, I'm just reciting things in my head. Oh, sorry. I'll try to keep my lips from moving. It's more than all right. I just didn't want to cut you off before I change subjects. But with respect to the intervention itself and whether that was properly denied, I want to point out that timeliness, of course, is the threshold requirement for intervention before reaching the question of whether Ms. Gonzalez could have a statutory right to intervene. The court, of course, has to consider whether her effort to do so was timely. Here, Ms. Gonzalez waited five months from when the consent decree was lodged to move to intervene. This is the first I'm hearing that she was not aggrieved until December 2021. She's never made that representation anywhere in her briefing before. Her argument today was that she's aggrieved as of, I think, March of 2022. Oh, I'm sorry. I thought she said that she became aggrieved in December of 2021, and then she did not file her motion until March of 2022. Well, we pressed her a little bit, and then she talked about having opposed filing objections, and then once those objections were denied, I think that she landed on through that timeline. My third point was March of 2022. I see. And I just want to be clear, Your Honor, that even assuming I take her to be saying that she wasn't aggrieved within the meaning of the statute until December 2021, that she then waited until February 10th of 2022 to file objections, there's absolutely no explanation for that delay anywhere in the record. Those objections, of course, are procedurally improper. Because she was not a party, they were struck the same day. She then waited approximately three more weeks to take any further action, filed her motion to intervene on March 4th. So, again, respectfully, those are not the actions of an intervener moving swiftly to preserve her rights. Even if she did not become aggrieved until December 2021, it's clear that she was aware of the alleged impairment of the decree on her interests as early as October of 2021. She represents that she joined with a union to voice objections. She then tweeted disagreement with the litigation in December and January, and then, of course, filed her objections in February. So as soon as she became aggrieved allegedly in December 2021, she could have moved swiftly to preserve her rights by filing a motion to intervene, and she didn't do that at this stage. I want to point out that over those five months where she didn't act, the district court had expended a lot of effort to move forward with the decree and to consider objections and arguments from other parties. Had Ms. Gonzalez timely moved to intervene, that could have been done in lockstep with one another. But instead, Ms. Gonzalez sought at the 11th hour, right before the decree was approved, to raise her motion to intervene, whereas the district court had already carefully reviewed the decree, held a hearing where it allowed CRD to present argument, requested multiple rounds of revisions from the parties, and so there was additional delay and prejudice to Ms. Gonzalez waiting to file her motion. Turning quickly to the question of whether she had a statutory right to intervene, which, again, we don't think that you need to address because both there's no effective relief and the lack of timeliness here, Ms. Gonzalez asserts that she engaged in related retaliation. I want to be clear that under the definitions of the claims in the complaint, the protected conduct for the retaliation claims in the decree has to be opposing sexual harassment or pregnancy discrimination. That's what makes it related to the claims in the decree. Here, Ms. Gonzalez, neither in her sworn declaration nor even in her representations in her brief, makes any clear factual assertions about how she did this. She says that she spoke out about workplace problems. She says that she encouraged the need for DEI initiatives. We press repeatedly in the briefing for additional details, and it never gets clearer than that. So one would think that if she had, in fact, it's certainly conceivable that one could encourage DEI initiatives that relate to opposing sexual harassment, but that is not what she has alleged here. She simply says DEI initiatives. That could be race discrimination. That could be pay and promotion discrimination. That could be any number of things, and that detail is just sorely lacking from her briefing and from her declaration that she submitted below. Was either the EEOC or CRD investigating questions of retaliation? Was that within the scope of either of those investigations? I can't speak to CRD's investigation, Your Honor. I'm not sure what. I know what we agreed to under the interagency agreement. I don't know what their investigation actually entailed. From our end, we did investigate sexual harassment-related retaliation and pregnancy discrimination, yes. But you said that her conduct was not within what you were addressing here. Yes, my point is that the complaint, I believe, is at 3 ER 440. The complaint's definition of the retaliation claims that will then be brought into the scope of the consent decree relates to opposing the protected conduct for the retaliation has to be opposing sexual harassment or pregnancy discrimination. To just finish that off, and I think what you're saying is that, as a factual matter, you don't see that she did that. That's not in her affidavit. You don't see that factually. That's exactly right. And maybe just to clarify, for example, if she had come in and said, I was retaliated against because I complained that people were using racial slurs in the office. That would clearly not be related retaliation within the scope of the decree. I'm not saying that's what she's alleged here, but I'm just trying to give an example of where one might engage in retaliation, but it nonetheless would not be within the scope of the decree. So there's nothing talismanic about the word retaliation that brings her within the scope of the decree, obviously. I see that my time is almost up. Are there any other questions I can answer? Any other questions? Thank you very much. Thank you for your argument. Welcome back. Thank you. It's been a while. Good morning again, Your Honors. Ashley All for the Activision Entities. I'm going to yield most of my time and just try to be helpful by providing some citations. So first, this case is not an appropriate vehicle for the court to address the aggrieved person question. The easy way is because of the timeliness issue. She did not, even under her own theory, she became an aggrieved person in December and then did not move to intervene until March. And under well-established precedent, a party has to act as soon as it knows its interests might be affected. That's under Allen. Her complaint that she filed that she says made her an aggrieved person is at ER 330, and it's dated December 20th. The second is on redressability. Again, I think timeliness is easier, but redressability is a threshold question. And she makes very clear in her brief that she had two specific concerns. That's in her opening brief at 22. And it cites ER 188. Those two specific concerns were the waiver provision, the individual release, the same one that we've been talking about, and the destruction of evidence. That is it. And for all the same reasons we discussed before, those aren't redressable. If the court has no further questions, I'll submit. No. I don't think so. Thank you for your argument, counsel. We'll hear rebuttal. Go right ahead. Okay. Thank you. So I would like to clarify that, yes, we are still seeking that the releases be invalidated as beyond the EEOC's jurisdiction. I would like to note that the consent decree contains a severability language in it on page ER 12, and that the claims for the individual agreement that individual claimants were required to sign as a mandatory condition of receipt of settlement funds that were created by the consent decree process was presented to the court as an attachment to the consent decree. The approval of the consent decree also extended to those attachments. So I do want to highlight that severability language for this court. With respect to the destruction of evidence, today is the first time it's been made clear that it is electronic records that are at stake. And so when electronic records are being changed, it's unclear whether there is an automatic saving of a prior version. We all know when we save Word documents, when we update the document, it doesn't automatically save. I think we know that. We say we all know. I agree. But what about the fact that there's this ongoing state court litigation? Everybody we're talking about, officers of the court, they're clearly aware of the obligation. They can't allow their client to destroy evidence in the sense of shredding a computer file, right? So that's, I think, why the district court thought this was really speculative. And it's not your position that the consent decree would authorize that sort of misconduct. Well, that was our concern, that compliance with the consent decree would create the basis for the authorization of changing the documents without a clear requirement. That's what the district court thought called speculative. So why was the district court wrong about that? Well, Your Honor, with respect to what the district court found, we had a two-sentence opinion, so it's unclear what exactly the district court found with respect to our motion to intervene. Okay. So looking at it here, it looks really speculative to me that we would assume that opposing, I think that's the right word. I think you're wanting me to assume that opposing counsel would allow or even direct destruction of documents. I don't want to assume that opposing counsel would engage in misconduct of that kind. I don't have an indication of this, and I'm not trying to cast aspersions anywhere, but I am really trying to understand this argument, and I don't get it. We just wanted an assurance in the consent decree itself that, similar to the removal of documents from personnel files, that documents that were removed would need to be retained, right? Some language to that effect does not exist for the electronic copy, and that's what we wanted to be included when we were before the district court. And on that note, I do want to point the third issue that we took with the consent decree that was raised before the district court and is, in fact, in our opening brief. It starts at page 32 of the opening brief, and that the consent decree unnecessarily conflicts with the California Labor Code. Section 1198.5 of the Labor Code provides employees with a right of access to everything in their personnel files. Once those documents are removed from their personnel files, it is beyond the scope of the statute and beyond the reach of the employees. The consent decree does not provide an enforceable mechanism, or it doesn't even speak to the ability of employees to request copies of those documents once it is removed from their files. And we will admit it, as we represented to the district court, it is a very simple fix that does not undermine any other provision of the consent decree, yet for whatever reason it was not provided. And then just, I want to, I just want to push back on the notion that this is an 11th hour, that the motion to intervene was at the 11th hour. I want to highlight that the consent decree and the request for the approval of the consent decree was filed on the same day that the complaint was filed in the district court. So if the notion is somehow that the appropriate time to intervene would have been in the small period of time between when the complaint was filed and when the consent decree was filed, that's a very difficult standard to meet. And I just, on the DEI topic before I run out of time, it is a fact-specific analysis. Given the facts of the workplace at Activision, those comments encompass sexual harassment, sexism and gender discrimination because of the pervasiveness of those in the workplace. And in the district court, the party simply said that DEI was not enough to be protected. The confusion that apparently arises happened for the first time on this appeal. So with that, I would ask that this case be remanded to the district court to, to remedy the portions of the consent decree that I identified. Thank you. Thank you. Thank you all for your careful preparation. It's an important case, two important cases, and we appreciate your help with them. We'll take that case under advisement, and we'll stand in recess for the day. All rise. This court for this session stands adjourned.
judges: BYBEE, CHRISTEN, Vitaliano